E. & J. BURKE, LTD. v. UNITED STATES (No. 4158) [1]

[1] C. A. D. 44.

United States Court of Customs and Patent Appeals, March 6, 1939

*B. A. Levett* (*James L. Gerry, Barnes, Richardson & Colburn,* and *Allan R. Brown* of counsel) for appellant.

*Webster J. Oliver,* Assistant Attorney General (*Charles J. Miville,* special attorney, of counsel), for the United States.

**376**

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the dutiable rate to be applied to an importation of rum, entered at the port of New York on December 4, 1934. It was stipulated before the Customs Court that the rum in question was the product of Great Britain.

The collector assessed duty upon said rum at the rate of $5 per proof gallon under paragraph 802 of the Tariff Act of 1930. There was also assessed the amount of $2 per gallon under section 4 of the Liquor Taxing Act of 1934, which latter assessment is not here involved.

The appellant protested, making claims as follows:

We claim that the goods in question are properly dutiable under the Act of June 17, 1930 as amended by the Act of June 12, 1934 (T. D. 47117) at the rate applicable upon importation of such or similar merchandise the growth, produce or manufacture of the Republic of Cuba, namely, $2.50 per gallon less 20 % thereof, to wit $2.00 by virtue of the trade agreement concluded with the Republic of Cuba on Aug. 24, 1934 and proclaimed by the President on Aug. 24, 1934 (T. D. 47232) and/or the most favored nation clause (Article II) of the Treaty concluded between the United States of America and the Kingdom of Great Britain on July 2, 1815.

We alternatively claim that if not so dutiable such merchandise is dutiable under said Act of June 17 1930 as amended by said Act of June 12, 1934, by virtue of said trade agreement with the Republic of Cuba and/or said Article II of said Treaty with the Kingdom of Great Britain, at the rate of $2.50 per proof gallon.

In the United States Customs Court the case was submitted upon the stipulation hereinbefore noted, and on January 17, 1938, the Customs Court rendered judgment overruling all claims of appellant's protest. Thereupon appellant appealed to this court, where the same claims are urged by it.

Paragraph 802 of the Tariff Act of 1930 reads as follows:

PAR. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and bitters of all kinds containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for, $5 per proof gallon.

The act of Congress approved June 12, 1934, entitled "An Act To amend the Tariff Act of 1930," hereinafter referred to as the "Reciprocal Tariff Act," reads, in so far as is here pertinent, as follows:

SEC. 350. (a) For the purpose of expanding foreign markets for the products of the United States (as a means of assisting in the present emergency in restoring the American standard of living, in overcoming domestic unemployment and the present economic depression, in increasing the purchasing power of the American public, and in establishing and maintaining a better relationship among various branches of American agriculture, industry, mining, and commerce) by regulating the admission of foreign goods into the United States in accordance with the

characteristics and needs of various branches of American production so that foreign markets will be made available to those branches of American production which require and are capable of developing such outlets by affording corresponding market opportunities for foreign products in the United States, the President, whenever he finds as a fact that any existing duties or other import restrictions of the United States or any foreign country are unduly burdening and restricting the foreign trade of the United States and that the purpose above declared will be promoted by the means hereinafter specified, is authorized from time to time—

(1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

(2) To proclaim such modifications of existing duties and other import restrictions, or such additional import restrictions, or such continuance, and for such minimum periods, of existing customs or excise treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder. No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists. The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly: *Provided*, That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part.

(b) Nothing in this section shall be construed to prevent the application, with respect to rates of duty established under this section pursuant to agreement with countries other than Cuba, of the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or to preclude giving effect to an exclusive agreement with Cuba concluded under this section, modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba: *Provided*, That the duties payable on such an article shall in no case be increased or decreased by more than 50 per centum of the duties now payable thereon.

The Reciprocal Trade Agreement between the United States and Cuba of August 24, 1934 (hereinafter referred to as the "Cuban Agreement"), insofar as is here pertinent, reads as follows:

The President of the United States of America and the President of the Republic of Cuba, desirous of strengthening the traditional bonds of friendship and commerce between their respective countries by maintaining as the basis for their commercial relations the granting of reciprocal preferential treatment, in continuation of the policy adopted in the Convention of Commercial Reciprocity of 1902 between the two countries, and taking into consideration that changed conditions have rendered it necessary to modify the provisions of that Convention, have arrived at the following Agreement:

\*      \*      \*      \*      \*      \*      \*

### ARTICLE III

Articles the growth, produce, or manufacture of the Republic of Cuba, enumerated and described in Schedule II annexed hereto and made a part of this Agreement, shall, on their importation into the United States of America, be granted

exclusive and preferential reductions in duties not less than the percentages specified respectively in Column 1 of the said Schedule, such percentages of reduction being applied to the lowest rates of duty, respectively, now or hereafter payable on like articles the growth, produce, or manufacture of any other foreign country.

No article the growth, produce, or manufacture of the Republic of Cuba, enumerated and described in Schedule II annexed hereto, with respect to which a rate of duty is specified in Column 2 of the said Schedule, shall in any case, except as provided in Article VIII or X, be subject to any customs duty in excess of the rate so specified.

Every article the growth, produce, or manufacture of the Republic of Cuba which is not provided for in Article I, and which is not enumerated and described in Schedule II annexed to this Agreement, shall, on importation into the United States of America, be granted an exclusive and preferential reduction in duty of not less than 20 per centum, such percentage of reduction being applied to the lowest rate of duty now or hereafter payable on the like article the growth, produce, or manufacture of any other foreign country.

Schedule II therein referred to, insofar as pertinent to this case, is as follows:

*Schedule II*

| Tariff Act of 1930 (paragraph) | Description of articles | Column 1 minimum preferential reduction to Cuba | Column 2 maximum rates of duty. Specific rates in United States dollars |
|---|---|---|---|
| * * *  802 | NOTE.—The provisions of this Schedule shall be construed and given the same effect, and the application of collateral provisions of the tariff laws of the United States to the provisions of this Schedule shall be determined insofar as may be practicable, as if each provision of this Schedule appeared respectively in the paragraph of the Tariff Act of 1930 noted in the column at the left of the respective descriptions of articles.   * * *  Rum, in bottles containing each one gallon or less_____ | * * *  20% | * * *  2.50 per proof gallon. |

No question is here raised regarding the validity of either the Reciprocal Tariff Act or the Cuban Agreement, the issue presented being solely one of construction.

The United States Customs Court, in overruling the protest here involved, relied upon the decision of this court in the case of *Von Damm* v. *United States,* 25 C. C. P. A. (Customs) 97, T. D. 49094. With respect to the issue at bar, appellant's brief states as follows:

It is not denied by appellant that the issue of law is the same as that raised in the *Von Damm* case, but it is submitted that this case as now presented and as presented to the court below involved pertinent questions of law and of construction which were not raised or discussed or passed upon either by the lower court or this court in the *Von Damm* case.

We cannot agree with appellant's counsel that in the case at bar "pertinent questions of law and of construction" are presented which were not raised or discussed or passed upon by this court in the *Von Damm* case, *supra;* but on the contrary, every question here presented, except the application of the most-favored-nation clauses of certain treaties, was in that case presented, considered, and decided.

It is true that appellant's counsel have, in the case before us, presented some new arguments with respect to such questions of law and construction, but they have not persuaded us that the views expressed and points decided in our opinion in the *Von Damm* case should not be adhered to.

Under the head of "Summation" in the brief of appellant's counsel we find the following:

Section 350 (a) (1) (2) is the sole authority for the negotiation of an exclusive trade agreement with Cuba, and 350 (b) is wholly declaratory of the authority granted under 350 (a).

The exclusive percentage of reduction was at all times unchangeable and inviolate, and was effectively in operation from the day that the Cuban Trade Agreement was executed.

The fixation of specific rates, or the general reduction of existing duties was coupled with generalization; the only exclusive preferential treatment of Cuba was established by the exclusive percentage of reduction applicable to the lowest rates of duty now or hereafter payable by foreign nations other than Cuba; fixed at 20 with respect to 26 items, 40 as to four and 50 percent as to six.

Our opinion in the *Von Damm* case discusses all of these questions at length, and we are convinced that the construction there given of the Reciprocal Tariff Act and the Cuban Agreement negotiated thereunder is correct.

Appellant's counsel in their brief state, with respect to said construction, as follows:

There should not be a violation of forty-eight treaties and trade agreements with nations which have solemnly acknowledged and agreed to the exclusive percentage of reduction spelled out in Column 1 of Schedule II.

Counsel do not point out any provision of any treaty or agreement that would be violated by our construction set forth in the *Von Damm* case, *supra*. The fact is that every existing treaty containing an unconditional most-favored-nation clause expressly exempts from its provisions the treatment which is accorded by the United States to the commerce of Cuba by the treaty of December 11, 1902, *or by any other agreement made with Cuba subsequent thereto;* the same exemption is made in reciprocal tariff agreements made between the United States and foreign countries other than Cuba.

It is true that the protest claims that the involved merchandise is dutiable at $2 per gallon by virtue of the most-favored-nation clause of the treaty with Great Britain of July 2, 1815. Appellant's counsel has not discussed this treaty, but it came before this court in the case of *Shaw* v. *United States*, 1 Ct. Cust. Appls. 426, T. D. 31500, involving an identical question based upon a reciprocal treaty between the United States and France. This question was there fully considered, and it was held that such reciprocal treaty did not contravene the

most-favored-nation clause of said treaty with Great Britain. That decision is controlling with respect to the similar question here.

Appellant's counsel in their brief further state:

Adverting to the phrase appearing at the head of Column 2 of Schedule II, or rather two phrases, which have been judicially noted, to wit:

"Maximum rates of Duty." "Specific Rates of Duty in United States Dollars." it is altogether within reason that the first phrase merely meant that the maximum rates were those which Cuba would be called upon to pay by reason of the application of the "preferential percentage of reduction" to the lowest rates payable by other foreign countries, just as the law and the Trade Agreement provided. It would not be unreasonable to conceive that the parties followed this line of thought.

Through forty years of more or less close touch with tariff and revenue legislation by the Congress; its administration by the Treasury Department; and, its interpretation by the Federal Judiciary, it has been borne in on the minds of the public that the second phrase above noted has at all times been accepted as connoting the transposition or conversion of a specific rate into an ad valorem rate of duty; or, the conversion of an ad valorem into a specific rate of duty, just exactly as was so patently and obviously done in respect to the Cuban preference and specific rates as set forth in Schedule I, Columns 1 and 2. Specific rates in Schedule I most certainly do not establish preferentials. Then why should this be so in Schedule II?

We confess our inability to understand the basis of the assertion above quoted that the specific rates in schedule I of the Cuban Agreement do not establish preferentials. Schedule I establishes exactly the same kind of preferentials with respect to goods entering Cuba from the United States as does schedule II for goods entering the United States from Cuba. Both schedules provide for minimum percentage preferential reductions and maximum rates. Article II of the agreement relates to schedule I, and Article III relates to schedule II. Both articles are identical, with the exception that the names of the respective countries are transposed, Article II dealing with imports from the United States into Cuba, and Article III with imports from Cuba into the United States.

Finally we would observe that it is not clear to us what is the opinion of counsel for appellant as to the proper rate of duty upon the involved rum. From appellant's brief we gather that the present view of counsel is that the involved rum is dutiable, not at $2.50 or $2 per gallon, as claimed, but at $3.12½ per gallon. We quote:

And so likewise with respect to Rum. Here the rate of duty in the Cuban Agreement, Column 2, Schedule II, was fixed at $2.50 per gallon. This rate was also exclusive to Cuba, coupled with a 20% preferential; and existing duties were established at $3.12½ per gallon, or in other words twenty per cent in advance of the Cuban exclusive rate. * * *

But no rate of $3.12½ per gallon was ever proclaimed by the President, and the difficulties confronting appellant are plain with respect to informing the court as to the rate applicable upon their theory of the case.

After giving careful consideration to the arguments of counsel in the case at bar, we reaffirm our views expressed in the *Van Damm* case, *supra*, and they are controlling here.

The judgment of the United States Customs Court is *affirmed.*